WHITMAN v. COOK.

EQUITY—PRAYER—APPEAL AND ERROR.

A prayer for affirmative relief is essential to a decree awarding the defendant equitable remedies, and on appeal a decree granting relief, in the absence of such prayer, will be modified by ordering the bill dismissed. STONE, C. J., and MOORE and PERSON, JJ., dissenting.

Appeal from Genesee; Withey, J., presiding. Submitted April 14, 1916. (Docket No. 137.) Decided June 1, 1916.

Bill by Anstice Whitman against Miles P. Cook and others for an injunction restraining defendants from opening up a private right of way across complainant's land. From a decree for defendants, complainant appeals. Modified and affirmed.

*Clarence Tinker* (*George F. MacNeal*, of counsel), for complainant.

*Farley & Selby*, for defendants.

MOORE, J. This is an injunction bill filed to restrain defendants from opening a private right of way across complainant's lands, from the Fenton road, so called, to land on the shore of Long Lake, purchased by the defendants from the complainant. From a decree dismissing the bill of complaint and establishing the private way, the case is brought here by appeal.

Omitting the formal parts of the bill of complaint, it avers the making of a deed between the parties containing the words:

"Also conveying the right of way from the Fenton road to the grove back of Fred J. Pierson's property; thence north along the east line of said grove to the north line of said farm."

We quote from the bill of complaint:

"Your oratrix, further complaining, says that about one year ago said grantees in said deed demanded a road, according to said paragraph in said deed contained, and proceeded to open and construct the road; that the Fenton road, so-called, runs in a northerly and southerly direction on the east side of complainant's farm, and that there is and has been a road running from the so-called Fenton road running in a westerly direction to Long Lake, situated west of said property; that said defendants started about 80 rods west of the so-called Fenton road without the consent of your oratrix, and tore down her fences between the lands of said Pierson and your oratrix, and construct-

ed a road running northerly between the land of said Pierson and your oratrix as far as they desired, and constructed the same, taking for the construction of said highway a portion of the land of your oratrix to which they had no title; that for the purpose of avoiding litigation she did not interfere in the construction of said highway or road, and that said defendants have used and occupied said lands as a highway from the time they constructed it up to the present time, and they have, as this complainant alleges, a complete highway to their premises, and have full egress and ingress to their premises, and said highway was built and constructed, is at the present time open and used by them and the public, as they may desire, giving them full access for ingress and egress to their premises and compares in every respect to the paragraph in said deed hereinbefore set forth."

The bill proceeds to say that defendants are about to open another right of way from the Fenton road to their lands through her farm, to her great injury and without right, and prays that they may be enjoined from doing so.

The answer is at length, but the substance of it is that the opening of the way mentioned in the bill of complaint was a temporary expedient to avoid destroying the crops of complainant's tenant, and it was so understood when it was opened. The answer is accompanied by the affidavits of the two men who opened the right of way, which affidavits sustain the averments of the answer. It is further averred that the defendants have a right to open a private way where they purpose to open it by virtue of a deed from complainant to them wherein 20 acres of land and a private way is granted for a consideration of $5,000. The answer prayed that the bill of complaint might be dismissed, but it did not ask for affirmative relief.

The accompanying plat will help to explain the situation:

The initials F. J. P. indicate the location of the Pierson land.

The complainant's contention is that she granted a right of way as now constructed from A to D to C, and having agreed on the location thereof and the

width thereof, and the defendants having constructed and fenced a permanent road in this place, they cannot now change the location against her wishes and over her objection.

The defendants' contention is that the deed conveys a right of way from the point C to the Fenton road, and therefore from C to B, and it cannot be otherwise because she had no right to give a right of way from A to D: *First,* because that right of way had been deeded by her to the Woodhull Land Park Company, Limited, and others, and that this right of way to the defendants would be increased servitude; *second,* that the right of way to the Woodhull Land Park Company, Limited, and others, from A to D was exclusive; *third,* that if the right of way from A to D was a public highway, as claimed by complainant, she had no right to deed it to defendants; and, *fourth,* that the opening of the right of way from C to D was a temporary expedient, and was not intended to be permanent, but it was intended that the right of way conveyed was from B to C and then north.

Before the replication was put in a motion was made to dissolve the injunction, when the trial judge decided to hear the case upon its merits. With the exception of one witness who was sworn out of the usual order of proofs that he might attend a funeral, no testimony was put in on the part of the defendants.

The three deeds which had been made by complainant were introduced in evidence, and witnesses were sworn in her behalf. Two deeds besides the one given by complainant to defendants were given to other parties. One of them was executed in July, 1898, and is a conveyance from the complainant to William A. Paterson and William R. Hubbard of certain land on Long Lake, and contains the following provision:

"Together with the right of way from Fenton road, as now so called, to the above-described property; said

right of way to be of sufficient width to be used as a wagon road."

The other is a conveyance made in 1900 from complainant to the Woodhull Park Land Company, Limited, conveying to it certain property on Long Lake with the following provision:

"First party also conveys a right of way of suitable width for driving with carriages from the Fenton road, so-called, to above-described premises, said right of way to be perpetual and to belong to the parties of the second part, their heirs and assigns. It is hereby understood and agreed that the first party conveys the above-described land to second party, and, first party having heretofore sold five lots, the roadway to said lots and the ingress and egress to said lots sold are to be and remain as at the present time, unless said second party make other and different arrangements with the parties to whom said lots were sold, and this deed does not convey or cut off any right of the parties who have heretofore purchased lots on said premises."

At the close of defendants' testimony the trial judge expressed himself as follows:

"*The Court:* I don't care to hear from the other side. It is impossible to escape the conclusion that the complainant has made an absolute conclusive case against herself. In the first place, she has deeded this old right of way from the Fenton road to the Woodhull Park property on two different occasions, as I have it, by a deed absolute in terms which convey to the grantors the exclusive right to use the right of way. Following that the proofs on her part show that the right of way has been used as a public highway for a long time. Taking that as true, and the court is bound to take it as true, as the proofs stand in her behalf, she cannot be heard to say here that she granted any rights in that passageway. She is precluded from saying that under both theories: *First,* that she had previously twice conveyed it to private persons; and, finally, as she herself declares, it was a public highway, so she could not convey any interest in it.

"Now, she conveyed in clear language a right of

way to property for which she received $5,000. The language of the instrument is plain—'also conveying the right of way from the Fenton road, to the grove back of Fred J. Pierson's property; thence north along the east line of said grove to the north line of said farm.' Now, that indicates clearly and conclusively where the right of way she granted is, and it is from the Fenton road to the grove back of the Pierson land. The map which she submitted shows where the Pierson land is, and she granted the right of way from the Fenton road to the Pierson land, and that is north of the right of way which she is claiming to be public. Then she says, and that precludes herself, from thence north along the east line to the north line of the farm. There is no escape from it. She granted a right of way there in plain terms and unambiguous language. I say there is no escape; there is no escape under this bill and the issues as framed here; the only escape for her is a bill to correct alleging fraud and establishing it. The bill is dismissed.

"It isn't right and it isn't necessary that she should be cut off from access to this land north of this right of way, and I have no idea' that these parties want to cut her off from that access to it, and I suggest that they draw some kind of a document giving her ready access to that land which she ought to have, and, if you will do that, it may be done before the decree is signed.

"*Mr. Farley:* We consent it to be inserted in the decree.

"*The Court:* That would do it.

"*Mr. Farley:* I would like to have the decree specify the width. It seems to me that it ought to be laid out so as to let automobiles pass. We think 30 feet would be sufficient. If the court thinks that is too much, and we can get along with less, we don't want to take any more than is necessary.

"*The Court:* My impression is that 30 feet is more than is necessary. I will find out. My impression is 25 feet is enough.

"*Mr. Farley:* There can be no objection to having it run along the line fence.

"*The Court:* The deed indicates where it is to run. The bill is dismissed, with costs against the complain-

ant for the reasons stated, and the defendants must submit to having inserted in the decree a provision which will give the complainant ready access to that portion of her farm which is to be cut off by this proposed highway, or right of way, which may be 20 feet wide. The decree shall provide further that the defendants shall restore that portion of the right of way which they have worked from the intersection of the old right of way north to the point where the new right of way intersects the one formerly worked by defendants, in the same condition practically that it was before the defendants took possession of it for the purpose of a passageway."

A decree was entered in accordance with the above. Before it was entered objection was made because the answer only asked that the bill of complaint be dismissed, and did not ask for affirmative relief.

It would profit no one to set out the provisions of the various deeds and the testimony, further than has already appeared. We are satisfied the trial judge gave to the deeds a proper construction, and, if the answer had prayed for affirmative relief, we should be satisfied with the decree.

The solicitors for the defendants say as to the affirmative relief granted defendants that it was designed as much for the protection of the complainant as for the defendants, and suggest that the trial judge followed the course pursued by this court in *Moore* v. *White,* 159 Mich. 460 (124 N. W. 62, 134 Am. St. Rep. 735). It does not appear in that case that objection was made to the course pursued.

In the instant case objection was made, and counsel did not ask to amend the answer. The objection is renewed here, and we think it has much force. We have no doubt, however, of our right to direct the pleadings to be amended so as to conform with the proofs so as to ask for affirmative relief, and we will treat the answer as so amended. But because of this we will not give costs of this court.

The decree should be affirmed as made, but without costs to either party in this court.

STONE, C. J., and PERSON, J., concurred with MOORE, J.

OSTRANDER, J. The decree should be limited to one dismissing the bill with costs. As so modified, it is affirmed.

KUHN, STEERE, and BROOKE, JJ., concurred with OSTRANDER, J.

BIRD, J., did not sit.